**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**TRANCITO O. GOMEZ,**

**Plaintiff,**

**v.** **No. 99cv0721 JP/JHG**

**KENNETH S. APFEL,**
**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

This matter is before the Court on Plaintiff's (Gomez') Motion to Reverse for an Award of Benefits , or in the Alternative, for a Rehearing, filed March 8, 2001. The Commissioner of Social Security issued a final decision denying Gomez' application for disability insurance benefits and for supplemental security income benefits. The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to reverse is well taken and recommends that it be GRANTED.

Gomez, now forty five years old, filed his first application for disability insurance benefits and supplemental security income benefits on July 27, 1994, alleging he had been unable to work since December 15, 1993, due to a prosthetic left eye, inability to get along with people, alcohol abuse and low back pain. The Commissioner denied Gomez' claim both initially and on reconsideration. Gomez appeared before the ALJ on October 10, 1995. On May 28, 1996, the ALJ found Gomez was not disabled and denied benefits. The Appeals Council denied Gomez'

request for review of the ALJ's decision.  Therefore, Gomez sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  The Commissioner filed a motion to remand, requesting the district court remand the matter to the ALJ in order to obtain a consultative mental status examination, to review updated treatment records, to address findings from the State agency medical personnel in accordance with Social Security Ruling 96-6p, to re-evaluate the claimant's mental impairments, to complete a Psychiatric Review Techniques form, and to evaluate the claimant's drug and alcohol problems under the current law regarding these conditions.  *See, Gomez v. Callahan*, CIV No. 97-0579 SC/LFG.  The district court granted the motion to remand on March 24, 1998.

Before his case was heard by the ALJ, Gomez filed another application for disability insurance benefits and supplemental security income benefits on July 22, 1997, alleging disability since December 15, 1993.  This claim was denied initially and on reconsideration.  Gomez requested an administrative hearing.  The ALJ consolidated the two cases and held an administrative hearing on December 16, 1998.  According to the ALJ's May 27, 1999 Decision, Gomez appeared with counsel and testified.  The ALJ's Decision indicates Gomez' mother and his brother also testified.  *Id.*  However, the transcript provided to the Court only reflects Gomez' testimony.

The ALJ held a second administrative hearing on April 7, 1999.  The ALJ's May 27, 1999 Decision indicates that at the April 7, 1999 administrative hearing, the following individuals testified: (1) Gomez; (2) Stella Gomez (Gomez' mother); (3) Jim Gomez (Gomez' brother); (4) Sharon Sears (Gomez' case manager at University Hospital); and (5) Kevin Davis, a vocational expert.  Unfortunately, defendant was unable to locate the cassette tape of the April 7, 1999

hearing. On March 30, 2001, defendant filed a motion to remand the case pursuant to sentence 6, Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to located the cassette tape. Due to defendant's representations that it would take at least ten months to locate the cassette tape, United States Magistrate Judge Molzen denied the motion to remand on May 4, 2000. Therefore, the Court must rule without the benefit of critical testimony and proceed with the record before it.

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand Gomez makes the following arguments: (1) whether substantial evidence supports the ALJ's decision that he was not disabled; and (2) whether the ALJ properly applied the statutory amendments pertaining to drug and alcohol abuse.

In his May 27, 1999 Decision, the ALJ found Gomez had a severe impairment or combination of impairments, i.e., status post nucleation of the left eye, musculoskeletal back pain, alcohol and substance dependence, and major depression with psychotic features. Tr. 423-432. However, the ALJ found Gomez's vision problems did not meet any relevant listing because Gomez's visual acuity in his right eye was normal with correction. Tr. 429. The ALJ also found Gomez' low back pain was "not documented by x-rays or other testing as including fractures, arthritis or vertebrogenic problems." Id.

Finally, the ALJ found Gomez' mental problems "were at listing's level severity when he was drinking or abusing drugs." *Id.* The ALJ specifically found

> Based on my review of the medical evidence, and considering Listing 12.09B, I find that when the claimant is drinking he has only a slight limitation on his activities of daily living since he is able to care for his own needs and help around the house. However, he frequently has problems with concentration, persistence and pace to complete tasks in a timely manner, as is shown by his performance during the evaluation with Dr. Rodriquez. He also has a marked restriction on his maintaining of social functioning when drinking. He reported he had trouble relating to other people. He also punched out a wall at the mental health clinic while drinking in February 1995. Finally, he has had at least one or two episodes

> of deterioration or decompensation in work or work-like settings because of his drug and alcohol use.
>
> When the claimant is not drinking or abusing substances such as crack cocaine and marijuana, he has no limitations at listing level severity. He functions well in activities of daily living, socially and seldom has problems with concentration, persistence or pace to complete tasks in a timely manner. The claimant's functioning improves significantly ever (sic) time he stops drinking for any significant period of time. His GAF[1] scores increase dramatically.

Tr. 430. The ALJ ultimately concluded Gomez' drug and alcohol abuse was a contributing factor material to a finding of disability. Tr. 432. The ALJ found that if Gomez was not abusing alcohol and drugs, his mental conditions would not be severe impairments. *Id.* Additionally, the ALJ found Gomez' drinking interfered with treatment of his mental problems and "exacerbated his depression and social and concentration problems." *Id.* Accordingly, the ALJ found "under Public Law 104-121, the claimant will not be considered disabled." *Id.* This conclusion is not supported by substantial evidence.

At the time of Gomez' first application in 1994, drug or alcohol addiction could support a finding of disability. However, in 1996, Congress amended the Social Security Act to provide that '[a]n individual shall not be considered to be disabled for purposes of this subchapter if

---

[1] "GAF" stands for Global Assessment of Functioning," and is a scale used by clinicians to report an individual's overall level of functioning. *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) The scale does not evaluate impairments caused by physical or environmental factors. *Id.* GAF scores range from 0 to 100. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expression of death). *Id.* at 32. A GAF score between fifty-one and sixty indicates"[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers). *Id.* at 34. Gomez' GAF scores ranged from 20 to 60. Tr. 122 (40-50), Tr. 139 (50), Tr. 152 (40), Tr. 246 (55), Tr. 268 (50), Tr. 286 (30 on admission, 50 at discharge), Tr. 289 (30-35), Tr. 301 (30 on admission, 45-50 at discharge), Tr. 334 (50), Tr. 338 (20 on admission, 40 at discharge), Tr. 340 (35), and Tr. 344 (20 on admission).

alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). Under this regulation, the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol, and then determined whether any or all of plaintiff's remaining limitations would be disabling.

The regulations make clear that a finding of disability is a condition precedent to an application of 42 U.S.C. § 423(d)(2)(C). 20 C.F.R. § 416.935(a). Therefore the Commissioner must determine whether a plaintiff is disabled prior to finding that alcoholism is a contributing material factor. *Id.* The ALJ must then determine whether plaintiff would still be found disabled if he or she stopped abusing alcohol. 20 C.F.R. § 416.935(b)(1). If so, then the alcohol abuse is not a contributing factor material to the finding of disability. 20 C.F.R. § 416.935(b)(2)(ii). If, however, the plaintiff's remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of disability. 20 C.F.R. § 416.935(b)(2)(i).

In this case, the ALJ failed to make a finding of disability prior to finding that Gomez' alcoholism was a contributing material factor. In his Decision, the ALJ stated "[T]he claimant's mental problems are at listing's level severity when he is drinking or abusing drugs." Tr. 429. Nonetheless, the ALJ's conclusion that Gomez' remaining impairments would not be disabling without the alcohol abuse and therefore the alcohol abuse was a contributing factor material to

the finding of disability is not supported by substantial evidence.

The ALJ relied on the consultative psychiatric evaluation performed by Dr. Carlos Balcazar, a psychiatrist. Dr. Balcazar opined Gomez had adequate judgment to plan a work sequence, could use tools and materials for simple jobs, could perform one- or two-step repetitive tasks at a competitive rate and could handle his own funds without supervision. Tr. 446. Dr. Balcazar concluded that he "could not foresee difficulty in his [Gomez'] interaction with coworkers and supervisory personnel." *Id.*

The ALJ also relied on Dr. Michael Rodriguez' consultative psychological evaluation. Dr. Rodriguez, a psychologist, found Gomez had a "clearly very flat affect" with signs of depression. Tr. 563. Dr. Rodriguez also found Gomez had impaired immediate and recent memory functioning, but somewhat intact remote memory functioning. *Id.* Dr. Rodriguez administered the Wechler Adult Intelligence Scale. Gomez performed at a Verbal I.Q. equivalent of 69, a Performance I.Q. of 64, and Full Scale I.Q. of 64. *Id.* These scores placed Gomez in the borderline range of mental retardation. Dr. Rodriguez opined that [Gomez'] testing was an accurate measure of his cognitive abilities and concluded Gomez was not able to manage his own funds. *Id.*

However, the ALJ gave little weight to Gomez' treating psychiatrist's evaluation. Tr. 426. Dr. Michael Bogenschutz evaluated Gomez and found that Gomez experienced auditory hallucinations and depression symptoms which persisted even when Gomez was sober for more than a month. Tr. 612. Dr. Bogenschultz practices at the Dual Diagnosis Clinic at the Mental Health Center at the University of New Mexico and is an Addiction Specialist in addition to being a psychiatrist. Tr. 613. Based on his ongoing treatment of Gomez and his functional capacities

evaluation, Dr. Bogenschutz found Gomez **moderately severely impaired** in his ability to relate to others, **moderately severely impaired** in his ability to attend meetings (church, lodge, etc.), work around the house, socialize with friends and neighbors, **moderately impaired** in his ability to comprehend and follow instruction, **moderately severely impaired** in his ability to maintain attention and concentration, **moderately severely impaired** in his ability to perform work requiring frequent contact with others, **moderately severely impaired** in his ability to interact with supervisors, **moderately severely impaired** in his ability to perform work where contact with others would be minimal, **moderately impaired** in his ability to perform simple tasks, **moderately severely impaired** in his ability to perform complex tasks, **moderately severely impaired** to perform repetitive tasks, moderately severely impaired in his ability to influence people, **moderately severely impaired** in his ability to make generalizations, evaluations or decisions without immediate supervision, **moderately severely impaired** in his ability to carry out responsibility for direction, control and planning, and **moderately severely impaired** in his ability to maintain a work pace appropriate to a given work load. Tr. 611, 612. A rating of "moderately severe" indicates an impairment which seriously affects ability to function. Dr. Bogenschultz also indicated Gomez' impairments would last for twelve months or longer at the severity listed. *Id.* Dr. Bogenschutz opined that the hallucinations and depression **severely impaired** Gomez' ability to function in a work environment. Tr. 612.

In his Decision, the ALJ explained he would not give great weight to Dr. Bogenschutz' functional capacities evaluation and opinion and gave the following reasons for this decision.

> First, it is not clear exactly who filled out this form since the signature is illegible. Secondly, there is nothing provided regarding this doctor's relationship to the

> claimant. Finally, the doctor also noted on the form that once the claimant was sober he continued to experience hallucinations and depression for more than a month. However, he does not say these symptoms persist for up to twelve months or more once the claimant is sober and implies they do lessen with sobriety.

Tr. 426. It is clear from the record that Dr. Bogenschutz submitted the form. In a letter dated February 26, 1999, Sharon Shears, Gomez' mental health case manager, discussed this functional capacities evaluation by Dr. Bogenschutz. Tr. 613. Moreover, in a letter dated April 8, 1999, Gomez' counsel forwarded Dr. Bogenschutz' functional capacities evaluation to the ALJ. Tr. 609. In the Court's experience, many physicians' signatures are illegible. However, this should not be a reason for discounting their reports or opinions. The evidence also indicates Dr. Bogenschutz is Gomez' treating psychiatrist. Tr. 613. Finally, the Court finds no implication in Dr. Bogenschutz' functional capacities evaluation that Gomez' symptoms lessen with sobriety. Dr. Bogenschutz's functional capacities evaluation specifically states that he expected Gomez' impairments to last for twelve months or longer at the level of severity indicated. Tr. 612.

The ALJ also discounted the testimony of Sharon Shears as "not an acceptable medical source of testimony." Tr. 426. Due to the loss of the April 7, 1999 administrative hearing cassette tape, the Court does not have the benefit of her testimony. However, according to the ALJ's Decision, Ms. Shears testified Gomez was not drinking yet his problems continued. She also opined Gomez needed more treatment and could not work a forty hour week. *Id.* Additionally, there is a letter in the record by Ms. Shears indicating the doctor at Turquoise Lodge could provide supporting documentation that Gomez' hallucinations persisted even after he was sober. Tr. 613. In her letter, Ms. Shears also indicated Gomez was on risperdal, an anti-psychotic medication and although Gomez' condition had improved he continued to have

hallucinations.  *Id.*  Finally, Ms. Shears indicated Gomez tended to be disorganized in his thinking and needed supervision and direction in order to carry out treatment plan activities.  *Id.*

On November 6, 1998, Dr Carol Fryer, Gomez' attending physician while he was hospitalized at UNM Medical Center, noted in her discharge notes that it was not possible at that time to rule out a primary psychotic disorder.  Tr. 466.  Dr. Fryer referred Gomez to the Salvation Army alcohol treatment program with follow-up in the Dual Diagnosis Clinic for his ongoing possible psychotic symptoms and to Healthcare for the Homeless for his hypertension.  *Id.*

On September 14, 1994, Dr. Jan Hamilton performed a consultative examination on Gomez and noted "It is difficult to state whether his problems are related to alcohol use or to an underlying psychiatric disturbance."  Tr. 100.  Dr. Hamilton also opined that Gomez was unable to handle his own benefit payments.  *Id.*

On November 16, 1994, Gomez was evaluated by Dr. Quinn.  Tr. 143.  Gomez reported to Dr. Quinn that he started hearing voices "25 yrs– for years and years."  *Id.*  In Dr. Quinn's medical notes, she specifically questioned which came first, the hallucinations or the alcohol problem.  *Id.*  On November 19, 1994, Dr. Quinn noted Gomez' mother had reported Gomez starting hearing voices and having problems with his memory when "he lost his eye from being hit in the head with boards."  Tr. 140.  On November 23, 1994, Dr. Quinn diagnosed Gomez with significant cognitive impairment affecting his memory and attention.  Tr. 141.  Dr. Quinn questioned whether Gomez was suffering from alcoholic dementia or posttraumatic symptoms and recommended neuropsychological testing.  *Id.*  On February 22, 1995, Dr. Quinn listed the following differential diagnosis: psychosis, organic mental disorder, alcoholic hallucinosis, and schizophrenia.  Tr. 269.  On February 24, 1995, Dr. Quinn assessed Gomez with Psychosis NOS

(Not Otherwise Specified) and considered whether Gomez was suffering from organic mental disorder secondary to head injury or an underlying thought disorder. Tr. 258. On March 3, 1995, Dr. Quinn noted organic mental disorder secondary to head injury needed to be ruled out. Tr. 257. On March 20, 1995, Dr. Quinn assessed Gomez as having severe memory problems and listed Korsakoff's syndrome, trauma, and acute alcoholism as differential diagnosis. Tr. 253.

On July 17, 1995, the mental health care provider assessed Gomez and found he suffered significant cognitive impairment, poor memory and visual hallucinations. Tr. 250, 255, 256. On January 22, 1996, Dr. Buser, Gomez' attending psychiatrist during this particular hospital stay, noted "It may be that his visual hallucinations are a lasting component of extensive hallucinogenic usage of some 20 years ago." Tr. 287, 321.

Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is "significantly probative." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also, Briggs v. Massanari*, 248 F.3d 1235 (10th Cir. 2001). The regulations provide that the agency generally will give more weight to medical opinions from treating sources than those from non-treating sources and that the agency will give controlling weight to the medical opinion of a treating source if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). Unless good cause is shown to the contrary, the Secretary must give substantial weight to the testimony of the claimant's treating physician. If the opinion of the claimant's physician is to be disregarded, specific legitimate reasons for this action must be set forth. *Byron v. Heckler*, 742 F.2d 1232 (10th Cir. 1984). Additionally, the opinions of specialists related to

their area of specialty are entitled to more weight than that of a physician who is not a specialist in the area involved.  See 20 C.F.R. § 404.1527(d)(5).

In this case, the ALJ's reasons for disregarding Gomez' treating physician's opinions are not legitimate.  Moreover, Dr. Bogenschutz is also a specialist in the area of addiction and psychiatry therefore his opinion is entitled to more weight than the consultative opinions.  Considering the record as a whole, the Court finds the ALJ's May 27, 1999 Decision is not supported by substantial evidence.  The ALJ's determination that Gomez did not meet or equal a listed impairment when not abusing drugs and alcohol is not supported by the record.

Gomez contends he meets Listing 12.03, Other Psychotic Disorders.  The Court agrees.  Gomez suffers from hallucinations with marked difficulties in maintaining social functioning.  Gomez also suffers from deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner and repeated episodes of deterioration or decompensation in work or work-like settings which cause him to withdraw from that situation or to experience exacerbation of signs and symptoms.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03.  Accordingly, the Court finds that Gomez' Motion to Reverse should be granted.  This case should be reversed and remanded to the Secretary with instructions to grant Gomez benefits.

## **RECOMMENDED DISPOSITION**

The ALJ did not apply correct legal standards, and his May 27, 1999 Decision is not supported by substantial evidence.  Gomez' Motion to Reverse should be granted.  This case

should be reversed and remanded to the Secretary with instructions to grant Gomez Social Security benefits.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.